Mark W. Batten (*pro hac vice* pending)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600
Telephone:    617.526.9600
Facsimile:    617.526.9899
mbatten@proskauer.com
Attorneys for Defendant PFIP, LLC

PROSKAUER ROSE LLP
Harold M. Brody
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:    (310) 557-2900
Facsimile:    (310) 557-2193
hbrody@proskauer.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAJANEE SMITH, etc.,<br><br>                Plaintiff,<br><br>   vs.<br><br>PFIP, LLC, et al.,<br><br>                Defendants. | Case No.  3:18-cv-00233-SK<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT PFIP, LLC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>Honorable Sallie Kim<br><br>Date:   May 7, 2018<br>Time:   9:30 am<br>Ctrm:   A<br><br>Action Filed: January 10, 2018<br>Trial Date:     To Be Determined |

**INTRODUCTION**

Plaintiff Lajanee Smith's opposition to Planet Fitness's motion to compel arbitration or to dismiss largely fails to respond to that motion, making arguments without any attempt to distinguish or even to acknowledge the substantial contrary authority cited in the opening brief. For example, she contends that EFTA prohibits arbitration, without even mentioning the numerous cases Planet Fitness has cited that hold such claims to be arbitrable; and she challenges her assent to the agreement, without addressing the various cases holding that "clickwrap" agreements like that used on the Planet Fitness website are enforceable.  She argues that arbitration would impose great costs on her to pay the arbitrator, when in fact the rules she cites expressly impose those costs solely on Planet Fitness.  And in response to Planet Fitness's argument that the Electronic Funds Transfer Act ("EFTA") requires only financial institutions to honor requests to revoke authorization for electronic transfers, not payees like Planet Fitness, Smith insists without citing any authority that Planet Fitness had such an obligation even though the statute and regulations never mention it.  All of these arguments fail as a matter of law, and the Court should either compel arbitration in accordance with the Agreement, or dismiss this action for failure to state a claim.

**ARGUMENT**

**A.      The Court Should Compel Arbitration In Accordance with the Agreement.**

**1.      Agreements to Arbitrate EFTA Claims Are Enforceable.**

Smith begins her substantive argument by insisting that she cannot be required to arbitrate EFTA claims.  Plaintiff's Memorandum in Opposition ("Opp.") at 8-9.  As explained in the opening brief, however, EFTA's mere provision for an action in federal court, 15 U.S.C. §1693m, does not preclude application of the Federal Arbitration Act. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 100-101 (2012) ("[i]f the mere formulation of the cause of action in this standard fashion were sufficient to establish the 'contrary congressional command' overriding the FAA, valid arbitration agreements covering federal causes of action would be rare indeed.  But that is not the law"). 565 U.S. at 100–01.  In line with this reasoning, a number of courts have compelled arbitration of EFTA claims in particular, holding that the statute does not contain a "contrary

1  congressional command" precluding arbitration.  *See, e.g., Johnson v. West Suburban Bank*, 225
2  F.3d 366, 378-79 (3rd Cir. 2000); *Howse v. DirecTV, LLC*, 221 F. Supp. 3d 1339, 1345-46 (M.D.
3  Fla. 2016); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1272 (C.D. Cal. 2008).  Though
4  *Compucredit* and these other cases were cited in Planet Fitness's opening brief, Plaintiff does not
5  attempt to distinguish, or even acknowledge, them in her opposition.

6  **2.  Smith's Arbitration Agreement Is Not Procedurally Unconscionable.**

7  Smith next argues that the Agreement is procedurally unconscionable because she claims
8  that Planet Fitness's website misled her into believing that "she would not be agreeing to any kind
9  of contract."  Pl. Opp. at 9; *see id*. at 9-11.  But the exact content of the website as it appeared on
10 June 12, 2017, the date on which Smith concedes she signed up through the Planet Fitness website
11 (Smith Declaration ¶4), is before the Court as Exhibit C to the Merritt Declaration.  As Merritt
12 further attests, Smith could not have completed her membership signup without clicking the "I
13 have read, understand and agree" checkbox, located immediately adjacent to a large button that
14 would have shown Smith the agreement she was accepting.  Merritt Decl. ¶7.

15 It makes no difference that Smith apparently chose not to read the agreement. *Nguyen v.
16 Barnes & Noble Inc*., 763 F.3d 1171, 1179 (9th Cir. 2014); *Mundi v. Union Sec. Life Ins. Co*., 555
17 F.3d 1042, 1045 (9th Cir. 2009); *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243
18 (C.D. Cal. 2016).  As explained in the opening brief – another subject and set of case law that
19 Smith elects not to acknowledge or address in her opposition – online "clickwrap" agreements,
20 and buttons that require a click to make them available for review, are lawful and binding on the
21 individual who accepts them online.  *Cordas v. Uber Technologies, Inc*., 228 F. Supp. 3d 985,
22 988-91 (N.D. Cal. 2017); *Swift v. Zynga Game Network, Inc*., 805 F. Supp. 2d 904, 911-12 (N.D.
23 Cal. 2011).

24 Nor, for that matter, must the Court resolve any factual dispute about the content of the
25 Planet Fitness website, because arbitration agreements are enforceable even against non-
26 signatories where the consumer has accepted the benefits of the agreement.  Equitable estoppel
27 "precludes a party from claiming the benefits of a contract while simultaneously attempting to
28 avoid the burdens that contract imposes."  *Comer v. Micor, Inc*., 436 F.3d 1098 (9th Cir. 2006);

*see also Mundi*, 555 F.3d at 1045.  Smith claimed the benefits of the contract by using the Planet Fitness facilities for at least a month, Complaint ¶11; Smith Decl. ¶11, and so cannot argue that the contract under which Planet Fitness makes such benefits available should not apply to her. *Montoya v. Comcast Corp.*, 2016 WL 5340651, at *4-*5 (E.D. Cal. 2016).

Finally, the Agreement is not procedurally unconscionable because it does not irrevocably bind Smith to arbitrate all disputes.  Among other things, the arbitration clause permitted Smith to opt out of arbitration entirely (while retaining her membership) within thirty days, merely by sending written notice of that decision to the club where she exercised.  Merritt Decl. Ex. C at 2, Para. J.  The Agreement also permitted her to cancel entirely within five days, and potentially longer, in accordance with Cal. Civil Code §1812.85, which grants cancellation rights to consumers of certain health club services.  *Id*. at 1, 2.  If Smith truly was opposed to the arbitration provision, she had an opportunity to opt out of it; her failure to do so must have arisen either because she did not read the Agreement, or read it but elected not to exercise that option.  In neither case is Planet Fitness responsible for her decisions.

### 3. Smith's Arbitration Agreement Is Not Substantively Unconscionable.

Smith argues that the Agreement is substantively unconscionable primarily because, she claims, it binds her but not Planet Fitness to arbitrate disputes. Opp. at 2, 11-12.  She simply fails to read the entire sentence on which her argument depends.  The Agreement plainly binds both parties to arbitrate disputes: those in which the parties are "unable to resolve a complaint that you [Smith] may have," and also those in which Planet Fitness "is unable to resolve a dispute with you."[1]  Merritt Decl. Ex. C at 2, Para. J.  In either case, "we each agree" to binding arbitration.  *Id*. If the obligation were not mutual, the parenthetical would be superfluous.

Smith next argues that the arbitration provision is unconsciously broad because it applies to all disputes that may arise, citing a single case, *In re Jiffy Lube International Inc. Text Spam*

---

[1] The complete sentence reads: "In the unlikely event that Planet Fitness and/or PF Corporate is unable to resolve a complaint you may have to your satisfaction (or is unable to resolve a dispute with you after attempting to do so informally), we each agree to resolve such disputes through binding arbitration or small claims court rather than a court of general jurisdiction."  Merritt Decl. Ex. C, at 2.

3
MEMORANDUM ISO OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS
3:18-cv-00233-SK

1  *Litigation*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012).  Opp. at 12.  But the claim sought to be
2  compelled to arbitration in *Jiffy Lube* was completely outside the scope of the arbitration
3  agreement: the plaintiff had signed the arbitration agreement as part of an oil change, while the
4  suit concerned unwanted text messages offering future discounts.  Here, of course, the claim at
5  issue arises directly out of Smith's authorization of electronic fund transfers on page 1 of the two-
6  page Agreement.  In other words, had Smith asserted a claim well outside her gym-membership
7  relationship – such as the hypothetical murder case discussed in *Jiffy Lube*, 847 F. Supp. 2d at
8  1263 – *Jiffy Lube* might apply, but it does not here, where the claim falls well within the scope of
9  the core matters to which the arbitration clause applies: claims arising out of the gym membership
10  and Smith's agreement to pay for that membership.  *See, e.g.*, *Lainer v. Uber Technologies, Inc.*,
11  2016 WL 7444925 (C.D. Cal. 2016) ("the oil-change contract in *Jiffy Lube* did not contemplate
12  Jiffy Lube's future communications with Plaintiff. . . . [U]nlike *Jiffy Lube*, the arbitration
13  agreement here encompasses the disputed conduct"); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp.
14  2d 1182, 1208 (S.D. Cal. 2013) ("while the predicate conduct in *Jiffy Lube* was separate and
15  unrelated to the underlying contract, Defendants' alleged conduct in this case is directly related to
16  Plaintiffs' accounts and the contracts that govern them"); *Coppock v. Citigroup, Inc.*, 2013 WL
17  1192632, at *5 (W.D. Wash. 2013) (same); *McNamara v. Royal Bank of Scotland Group, PLC*,
18  2012 WL 5392181 (S.D. Cal. 2012) ("Plaintiff's TCPA claims relate to his Agreement with
19  Defendants, and are consequently subject to arbitration.").[2]
20        Smith next contends that the American Arbitration Association's consumer arbitration
21  rules (which the Agreement selects) restrict discovery and cost more than litigating in court,
22  because she must pay the arbitrator as well as a filing fee.  The latter contention is simply false.
23  The AAA's consumer arbitration rules cap the consumer's filing fee at $200 – less than the $400

---

[2] For this proposition *McNamara* cites *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748-49 (2011) and *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").  Smith insists that any ambiguities in the Agreement should be construed against Planet Fitness as the drafter, but the Federal Arbitration Act requires the opposite rule for arbitration agreements.

1   fee in this Court – and require *Planet Fitness* to pay the arbitrator's fee: "The business shall pay
2   the arbitrator's compensation unless the consumer, post dispute, voluntarily elects to pay a portion
3   of the arbitrator's compensation."  AAA, Consumer Arbitration Rules, Costs of Arbitration,
4   Section [ii], available at https://www.adr.org/sites/default/files/Consumer_Fee_Schedule.pdf (last
5   visited April 18, 2018).  With respect to discovery, the rules leave the determination to the
6   arbitrator to decide what is "needed to provide for a fundamentally fair process."  Also, these rules
7   apply equally to Planet Fitness and to Smith, and the central concern of substantive
8   unconscionability doctrine is ensuring mutuality.  *See, e.g.*, Opp. at 11-12 (emphasizing
9   importance of mutuality); *Armendariz v. Fdn. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 117
10  (2000) (discussing "limited discovery" available in arbitration and noting importance of mutuality
11  in that regard); *Lima v. Gateway, Inc*., 2012 U.S. Dist. LEXIS 120964, at *28 (C.D. Cal. Aug. 7,
12  2012) ("The paramount consideration in assessing substantive unconscionability is mutuality.").
13          Not surprisingly, then, courts in the Ninth Circuit regularly enforce arbitration clauses that
14  select the AAA's consumer arbitration rules and reject objections that those rules are
15  unconscionable.  *See, e.g., G.G. v. Valve Corp*., 2017 WL 1210220, at *3 (W.D. Wash. 2017);
16  *Sanders v. Concorde Career Colleges, Inc.*, 2017 WL 1025670, at *4 (D. Or. 2017); *Loewen v.
17  Lyft, Inc.*, 129 F. Supp. 3d 945 (N.D. Cal. 2015) (enforcing arbitration despite invocation of the
18  more onerous AAA Commercial Rules).

19  **B.      Smith Fails To State A Claim Against Planet Fitness For Unauthorized Transfers After Revocation of Authorization.**

20          Even if the Court were to refuse to compel arbitration, the Complaint must be dismissed
21  because the sole claim asserted – challenging "Defendant's unauthorized withdrawals from [gym
22  members'] . . . bank accounts after they have revoked authorization and consent," Opp. at 4 – fails
23  to state a claim as a matter of law, because EFTA's revocation provisions apply only to financial
24  institutions, not to payees like Planet Fitness.[3]  The relevant provision reads: "A consumer may
25  stop payment of a preauthorized electronic fund transfer by notifying the *financial institution*

---

[3] The Complaint also asserts a common law claim for conversion, but the claim under EFTA is the only asserted basis for federal jurisdiction.  Complaint, ¶¶3-4.

orally or in writing at any time up to three business days preceding the scheduled date of such transfer." 15 U.S.C. §1693e(a) (emphasis added); *see also* 12 C.F.R. §1005.10(c) (same).[4] Thus, if Smith wanted to stop the electronic fund transfers that she authorized in the Agreement, her simple remedy was to call her bank and revoke authorization, as EFTA contemplates. She did not do that. EFTA does not require Planet Fitness to honor a revocation of pre-authorized electronic fund transfers. *Miller v. Interstate Auto Group, Inc*., 2015 WL 1806815, at *3-*4 (W.D. Wis. 2015); *Baldukas v. B & R Check Holders, Inc*., 2012 WL 7681733, at *5 (D. Colo. Oct. 1, 2012), *report and recommendation adopted*, 2013 WL 950847 (D. Colo. Mar. 8, 2013); *Murphy v. Law Offices of Howard Lee Schiff, P.C*., 2014 WL 710959, at *1 (D. Mass. Feb. 26, 2014).

Smith first responds that EFTA requires payees to honor revocations even though the statute does not say so. Opp. at 15. She calls the statutory right to revoke "an additional right" that, she says, supplements some general free-floating right to revoke that cannot be found in EFTA. *Id*. She cites no authority at all for this proposition, and understandably so: the statute only provides a civil remedy against "any person who fails to comply with any provision of this subchapter." 15 U.S.C. §1693m(a). Smith's ability to state a claim under EFTA requires that she cite some provision of the statute that Planet Fitness allegedly violated. The Opposition makes no attempt to do so, other than pointing out that the statute frequently uses the word "authorization." That is certainly true, but Smith gave authorization; page 1 of the Agreement, in a block prominently labeled "PAYMENT AUTHORIZATION," authorizes recurring payments for the duration of the 12-month contract. Smith's claim here is about *revocation* of that authorization, and the statute deals with revocation solely in a section imposing that obligation on financial institutions. 15 U.S.C. §1693e(a).

Smith's reliance on *Friedman v. 24 Hour Fitness USA, Inc*., 2009 WL 2711956 (C.D. Cal. 2009) ignores the differences between these cases. First, the *Friedman* court was considering a

---

[4] The term "financial institution" means "a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. §1693a(9).

6
MEMORANDUM ISO OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS
3:18-cv-00233-SK

1  motion for class certification, not a motion to dismiss, and did not consider the question of
2  whether EFTA's revocation requirements apply to entities other than financial institutions.
3  Second, the reason the court never considered that issue is because 24 Hour Fitness never raised it:
4  in fact, the company had elected to argue instead, in an earlier motion to dismiss, that *it was a*
5  *financial institution*.  *See Friedman v. 24 Hour Fitness USA, Inc*., 580 F. Supp. 2d 985, 995 (C.D.
6  Cal. 2008).

7  Falling back, Smith argues that the Court should decide the motion to dismiss solely on the
8  pleadings, without considering the Agreement.  Opp. at 16-17.  First, the Agreement is not
9  necessary to decide the motion; the Complaint asserts a statutory claim related to "withdrawals
10 made after Plaintiff had revoked authorization," *id*. at 16, and the statute simply does not impose
11 an obligation on Planet Fitness to honor such a revocation.  Second, as explained in the opening
12 brief, the Court may consider the Agreement under Fed. R. Civ. P. 12(b)(6) without converting
13 this motion to one for summary judgment under Rule 12(d), for several reasons.[5]

14 Finally, citing the Magistrate Judge's opinion in *Baldukas*, Smith challenges "the
15 provisions preventing Plaintiff from revoking consent."  Opp. at 18.  She does not identify the
16 provision in the Agreement that prohibits revocation, and there is none.[6]  In *Baldukas*, a District of
17 Colorado decision, the Magistrate Judge briefly held that stopping payment through the financial
18 institution (that is, exercising the right that EFTA actually provides) would have breached the
19 agreement with the payee, and that that breach would sufficiently deter the individual from
20 exercising the statutory right to cancel – that is, the right to instruct *the financial institution* to stop

---

[5] See Opening Brief at 1 n.1.  To summarize: courts may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" without converting the motion to one for summary judgment.  *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Herguan Univ. v. Immigration & Customs Enforcement*, 258 F. Supp. 2d 1050, 1054 (N.D. Cal. 2017).  The membership agreement is referred to in the Complaint indirectly, is central to Smith's claims, and is the basis for Planet Fitness's jurisdictional challenge.

[6] Smith says she is responding to Planet Fitness's argument at page 11 of the opening brief. *See* Opp. at 16.  Planet Fitness did not argue that the Agreement prohibits revocation of authorization, but rather merely that Smith authorized recurring transfers in the first instance, which the Agreement plainly does say in the PAYMENT AUTHORIZATION section on page 1.

recurring transfers. But the Agreement here, unlike in *Baldukas*, does not purport to restrict Smith's statutory right to revoke authorization to her financial institution.[7] That is a critical distinction, as the *Miller* court recognized in its extensive analysis of this same argument. 2015 WL 1806815, at *4-*7 (distinguishing *Baldukas* on this basis and expressly declining to follow the brief discussion in that case); *see also Reid v. Commonwealth Equity Group, LLC*, 2017 WL 3457109 (C.D. Ill. 2017) (rejecting *Baldukas* for the same reason).

## CONCLUSION

For all of the foregoing reasons, Defendant's motion to compel arbitration should be granted, and Plaintiff's Complaint dismissed; alternatively, the Complaint should be dismissed for failure to state a claim as to which relief may be granted.

DATED: April 19, 2018

          PROSKAUER ROSE LLP


By:   /s/ *Harold Brody*
        Harold Brody

Attorneys for Defendant
PFIP, LLC

---

[7] In *Baldukas*, the payee's agreement required that revocation be completed by "written notification from me of its termination in such time and in such a manner as to afford Loan Stop and the Financial Institution a reasonable opportunity to act on it." *Id.* at *1. Planet Fitness's Agreement says nothing about what form of revocation Smith needed to provide to her financial institution.